# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:20-CV-472-DCK

| | |
|---|---|
| TRACY DENISE ROBINSON, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 14) and Defendant's "Motion For Summary Judgment" (Document No. 18). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that Defendant's "Motion For Summary Judgment" be <u>denied</u>; that the Commissioner's decision be <u>vacated</u>; and that this matter be <u>remanded</u> for further consideration.

## I. BACKGROUND

Plaintiff Tracy Denise Robinson ("Plaintiff" or "Robinson"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about December 9, 2016, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning April 21, 2015. (Transcript of the Record of Proceedings ("Tr.") 15). The Commissioner of Social Security (the

"Commissioner" or "Defendant") denied Plaintiff's application initially on February 1, 2017, and again after reconsideration on May 31, 2017. (Tr. 15). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 203).

Plaintiff filed a timely written request for a hearing on July 1, 2017. (Tr. 15). On February 20, 2019, and again on June 26, 2019, Plaintiff appeared and testified at a hearing before Administrative Law Judge Randall D. Huggins (the "ALJ"). (Tr. 14-15). In addition, Lavonne Brent and Karl S. Weldon, vocational experts ("VE"), and Stacey Deveaux, Plaintiff's attorney, appeared at the February 20, 2019, hearing. Christina Carrano represented Plaintiff at the June 26, 2019, hearing. (Tr. 15).

The ALJ issued an unfavorable decision on July 23, 2019, denying Plaintiff's claim. (Tr. 12-34). On August 28, 2019, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on June 23, 2020. (Tr. 311-13, 1). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on August 24, 2020. (Document No. 1). On March 26, 2021, the undersigned was assigned to this case as the referral Magistrate Judge. The parties consented to Magistrate Judge jurisdiction

2

on March 24, 2021, and this case was reassigned to the undersigned as presiding judge. (Document No. 11).

Plaintiff's "Motion For Summary Judgment" (Document No. 14) and Plaintiff's "Memorandum Of Law In Support Of Plaintiff's Motion for Summary Judgment" (Document No. 14-1) were filed May 28, 2021; and the "Defendant's Motion For Summary Judgment" (Document No. 18) and "Memorandum Of Law In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 19) were filed August 20, 2021. Plaintiff filed her "Reply Memorandum In Further Support Of Plaintiff's Motion for Summary Judgment" (Document 20) on September 3, 2021.

The pending motions are now ripe for review and disposition.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between April 21, 2015, and December 31, 2017, the claimant's last date insured.[1] (Tr. 15). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 32).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since April 21, 2015, the alleged disability onset date. (Tr. 18). At the second step, the ALJ found that obesity, left shoulder adhesive capsulitis, mild right ulnar nerve entrapment, cervical degenerative disc disease status post fusion with radiculopathy, fibromyalgia, lumbago with left-sided sciatica, bilateral knee impairment, left carpal tunnel syndrome, and major depressive disorder were severe impairments.[2] (Tr. 18). At the third step, the ALJ determined that Plaintiff

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 18).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform sedentary[3] work activity, with the following limitations:

> [Claimant] may climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. She was limited to frequent handling, fingering, and reaching. She must avoid concentrated exposure to unprotected heights, moving mechanical parts, loud noise and bright lights, defined as light brighter than standard office lighting. The claimant was limited to routine tasks that are not at production rate pace, *e.g.*, assembly line work. She was capable of sustaining concentration and pace for 2-hour segments during a standard 8-hour workday. She was limited to occasional interaction with supervisors, coworkers, and the public. She was limited to routine changes in an unskilled work setting.

(Tr. 21). In making this finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform her past relevant work as a bus driver. (Tr. 31). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 32). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a sorter, a packager, and a circuit board assembler.

---

[3] Under 20 CFR § 404.1567(a), sedentary work is defined as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Because a certain amount of walking and standing is often necessary in carrying out job duties, a job is sedentary if walking and standing is required occasionally and other sedentary criteria is met.

(Tr. 32-33). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between April 21, 2015, and December 31, 2017. (Tr. 33).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to properly weigh the medical opinions and failed to properly determine Plaintiff's residual functional capacity based on medical evidence; and (2) the ALJ failed to properly evaluate Plaintiff's subjective statements. (Document No. 14-1, p. 3). The undersigned will discuss each of these contentions in turn.

**A.     Assignment of Error # 1**

In the first assignment of error, Plaintiff argues that the ALJ failed "to properly weigh the medical evidence and failed to properly determine Plaintiff's residual function capacity." (Document No. 14-1, p. 5). Plaintiff primarily based her argument about the deficiency of the ALJ's analysis on the opinion of her treating physician, Dr. Friedland. According to Plaintiff, Dr. Friedland had treated Plaintiff "every four to six months for fibromyalgia, depression, and anxiety" since at least 2014. Id. Plaintiff argued that Dr. Friedland's "diagnoses and assessment" were supported by the fulfillment of the "fibromyalgia criteria including trigger point tenderness and fatigue, as well as laboratory diagnostic testing that excluded other alternative diagnoses." Id. The physical symptoms of her diagnoses included "severe, diffuse, daily joint pain in the shoulders, back, arms, wrist, hips, and knees, precipitated and/or aggravated by weather changes, walking, or standing, as well as depression with sadness, tearfulness, anxiety, and past suicidal ideation." (Tr. 469). Dr. Friedland opined that Plaintiff is "not a malingerer." (Tr. 468). In the Disability Impairment Questionnaire, Dr. Friedland recorded various physical limitations upon Plaintiff's ability to work an eight-hour day, each of which, he noted, were limitations that would have been

7

present since June 1, 2012.  (Document No. 14-1, p. 6) (citing Tr. 470-72).  In her own words, Plaintiff summarized those physical limitations as follows:

> Ms. Robinson could sit for 1 hour. Stand/walk for less than 1 hour, and must get up every 30 minutes when sitting and move around for 30 minutes before returning to a seated position. She could lift 5 pounds and occasionally grasp, turn, and twist objects with her upper extremities. Plaintiff could never/rarely use the hands/fingers for fine manipulations or use the arms for reaching, including overhead. Her pain was likely to increase in a competitive work environment. Ms. Robinson's symptoms were frequently severe enough to interfere with her attention and concentration. During an 8-hour workday, she would need to take unscheduled breaks to rest every 30 minutes. Depression and anxiety contributed to the severity of her symptoms and functional limitations. [M]s. Robinson would be absent from work more than three times per month, as a result of her impairments or treatment.

Id. (citing Tr. 470-472).

### i. Physical Limitations

According to Plaintiff, the ALJ erroneously gave "little weight" to the opinions of her treating physician Dr. Friedland.  (Document No. 14-1, p. 8).  This was an error, Plaintiff alleges, for two reasons.  First, Plaintiff claims the objective medical evidence cited by the ALJ, such as X-rays and MRIs, is inappropriate for the ALJ to consider when measuring disability due to fibromyalgia.  See id. at p. 9.  Plaintiff asserts that her fibromyalgia diagnosis can only be documented by the presence of tender points on examinations, ruling out other causes, and subjective symptoms, all of which is documented in her own case.  Id. at p. 8.  Second, Plaintiff argues the ALJ "substituted his lay interpretation of the clinical and objective evidence for the opinions from the treating physician… to conclude that the available findings could not result in the limitations described by the treating doctor."  Id.

Plaintiff contends that because Dr. Friedland's opinions are "supported by appropriate clinical and objective medical findings and the ALJ failed to credit any evidence… contradicting the opinions addressing the Plaintiff's fibromyalgia and related symptoms and limitations," his assessment "should have been given controlling weight." (Document No. 14-1, p. 10). Even if not assigned *controlling* weight, Plaintiff argues, the ALJ should have given Dr. Friedland's opinion the "greatest" weight under a variety of factors: (1) "Dr. Friedland treated Ms. Robinson regularly over a long period of time;" (2) "the nature of the treatment focused on Plaintiff's disabling chronic pain and fatigue due to fibromyalgia with referrals to appropriate specialists;" (3) Dr. Friedland cited to the evidence supporting his opinions;" and (4) "those findings are confirmed by the longitudinal treatment records." Id. at pp. 9-10. Plaintiff asserts that the ALJ "erred by disregarding these obviously relevant factors." Id. at 10. Instead, his articulation of Plaintiff's RFC was, Plaintiff contends, "unclear" in terms of what medical evidence supports it, for the ALJ gave little weight to the opinions of the non-examining state agency medical consultants, and no other medical opinion was provided. Id. Plaintiff argues that the ALJ "failed to provide a narrative discussion of any evidence… that supports the physical RFC of [Plaintiff]." Id.

In response, Defendant argues that the ALJ correctly gave Dr. Friedland's opinion "little weight" due to his finding that Dr. Friedland's opinion was "not consistent with the exam findings." (Document No. 19, p. 18). The ALJ noted that in records reported by Dr. Friedland, there was no point tenderness over Plaintiff's spine, and Plaintiff had 5/5 strength bilaterally in the upper and lower extremities in September 2016. (Tr. 27) (citing Tr. 719). Plaintiff's October 2016 MRI, ordered by Dr. Friedland, was negative for root compression. (Tr. 644). Her EMG, also ordered by Dr. Friedland, was within normal limits without evidence of electrical instability. (Tr.

651-52). She had normal MRIs for lumbar spine and her hip, as well as normal lumbar spine X-rays. (Tr. 27) (citing Tr. 652). Further, in October of 2016, on a musculoskeletal examination, Dr. Havlin reported that there was no evidence of lower extremity atrophy, Plaintiff maintains a 5/5 strength for bilateral hip flexors, quads, hamstrings, ankle dorsiflexors, plantar flexors, and EHL bilaterally. (Tr. 652). Defendant contends that the ALJ is "solely responsible for assessing a claimant's RFC and is not bound even by treating physician disability opinions in the face of other record evidence." (Document No. 19, p. 20).

Further, Defendant asserts, the ALJ's RFC "is supported by substantial evidence." Id. at p. 12. Defendant first argues that the opinions of Drs. Kunch and Roane, the state agency medical consultants who opined that Plaintiff could perform "light exertional work," supported the ALJ's decision. Id. The ALJ reduced their finding to sedentary work since neither doctor knew of Plaintiff's cervical fusion. (Tr. 27).

Second, Defendant points to physical medical evidence supporting the RFC, including, but not limited to: (1) Dr. Friedland's finding of 5/5 strength bilaterally in the upper and lower extremities, and no point tenderness over the spine and negative right shoulder tendon testing (Tr. 719); (2) the October 2016 MRI that demonstrated minimal degenerative changes and no spinal canal or neural foraminal narrowing (Tr. 24); (3) the MRI ordered by Dr. Friedland that was negative for nerve root compression (Tr. 644); and (4) medical imaging during the period at issue that showed primarily mild findings that "did not appear consistent with the level of impairment alleged by the plaintiff" (Tr. 26). (Document No. 19, pp. 15-17).

Finally, Defendant argues that Plaintiff's activities support the RFC. Id. at 17. The ALJ noted Plaintiff can pay bills, count change, handle a savings account, use a checkbook, go on walks, and go to the movies about twice a month. (Tr. 19-20, 22). Additionally, the ALJ noted

10

that Plaintiff stated she gets along "great" with authority figures and regularly sees her 3-year-old grandson to whom she reads. (Tr. 20).

Here, the undersigned finds that the ALJ erred by according the treating physician's opinion "little weight." The Fourth Circuit follows the treating physician rule, "which requires that ALJs give controlling weight to a treating physician's opinion on the nature and severity of the impairment if that opinion is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the record." Triplett v. Saul, 860 F. App'x 855, 863 (4th Cir. 2021) (internal quotations and citations omitted). The Court has emphasized that the "treating physician rule is a robust one… and may be disregarded only if there is persuasive contradictory evidence." Arakas v. Comm'r, Soc. Sec., 983 F.3d 83, 107 (4th Cir. 2021).

Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. Should a physician's opinion not meet the requirements of the treating physician rule, the ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) "the length of the treatment relationship and the frequency of examination;" (2) "the nature and extent of the treatment relationship;" (3) "supportability" or "the extent to which the treating physician presents relevant evidence to support the medical opinion;" (4) "consistency" of the opinion "with the evidence of the record;" (5) "the extent to which the treating physician is a specialist opining as to issues related to his or her area of specialty;" and (6) any other factors that "tend to support or contradict the medical opinion." Dowling v. Comm'r, 986 F.3d 377, 384-85 (4th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2)(i)-(6)). In Dowling, the Court found that the ALJ erred in his weighing of a treating physician's opinion because it only addressed the

11

"consistency" and "supportability" factors with no mention of the remaining four. Id. While the ALJ is not "required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion… it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." Id. at 385.

When fibromyalgia is the impairment at issue, "objective indicators [other than trigger point findings] such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of claimant's fibromyalgia, based on current medical understanding of the disease." Arakas, 983 F.3d 83, 107. To evaluate otherwise is a "pervasive misunderstanding" of fibromyalgia. Id. at 97 (internal citations omitted). It follows that "ALJs may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount… symptoms of fibromyalgia." Id. Further, a district court within the Fourth Circuit has recognized that sometimes, over a series of exams with the same patient, physicians record trigger point findings, and sometimes, they do not. See Janel G. v. Kijakazi, 2021 WL 3076407, at *10 (W.D.Va. July 21, 2021). But, where pain and tenderness are regularly recorded, *inconsistent records* of trigger point findings are not enough to reject fibromyalgia symptoms. Id.

In Arakas, the ALJ did not give the treating physician's opinion controlling weight due to "the lack of substantial support from the other objective evidence of record" despite the record containing "ample evidence of consistent trigger-point findings." 983 F.3d 83, 106 (internal citations and quotations omitted). The Fourth Circuit found that the ALJ's disregard of the treating physician's opinion because of "a lack of support from objective medical evidence…reveals [the ALJ's] misunderstanding of fibromyalgia, which does not produce such evidence other than trigger points." Id. In fact, the Court found that the ALJ should have given the treating physicians opinion controlling weight. Id. The treating physician "diagnosed [the claimant's] fibromyalgia based on

12

consistent findings of diffuse trigger points…[t]hus his opinion was well-supported by the clinical and laboratory diagnostic techniques… to establish the existence and severity of fibromyalgia." Id. (internal citations and quotations omitted).

In this case, the ALJ "reasoned that the lack of substantial support from the other objective evidence of record" justified his award of "little weight" to Dr. Friedland's opinion. See Arakas, 983 F.3d 83, 106. However, "the law makes it clear that such support is not necessary for according controlling or great weight to a treating physician's opinion." Id. The ALJ's use of objective medical evidence is inappropriate to discount Dr. Friedland's opinion as it "simply ha[s] no relevance to the severity, persistence, or limiting effects" of the disease based on current medical understanding. See id. at 96. Further, the ALJ noted trigger point findings throughout Plaintiff's shoulders and back in her physical examinations. (Tr. 23, 24). Thus, Dr. Friedland's opinion is "well-supported… to establish the existence and severity of fibromyalgia." See Arakas, 983 F.3d 83, 106. The ALJ's finding that Plaintiff exhibited "no point tenderness over the spine" does not justify a rejection of her fibromyalgia symptoms as other consistent trigger point findings are noted throughout her shoulders and back. See Janel G., 2021 WL 3076407, at *10. Like the treating physician's opinion in Arakas and due to the "unique nature" of fibromyalgia, Dr. Friedland's opinion was not based on "medically unacceptable clinical or laboratory diagnostic techniques" nor was it "*contradicted* by other substantial evidence on the record." Arakas, 983 F.3d 83, 106. Thus, this error requires remand.

### ii. Mental Limitations

With respect to the mental aspects of Plaintiff's RFC, Plaintiff argued that the ALJ failed to properly weigh medical opinions by giving Dr. Friedland's opinion "little weight," rather than controlling weight, and "great weight" to the opinions of non-examining state agency

13

psychologists. (Document No. 14-1, p. 12). Plaintiff contends that Dr. Friedland's "diagnoses and assessment" were supported by "clinical signs and symptoms" including "depressed mood, persistent or generalized anxiety, difficulty thinking or concentrating, easy distractibility, decreased energy, and inadequate sleep." Id. at p. 6 (citing Tr. 850). According to Plaintiff, Dr. Friedland opined that Plaintiff's anxiety and depression exacerbated her fibromyalgia symptoms and being in a work or work-like setting would exacerbate both her anxiety and pain. Id. Dr. Friedland noted Plaintiff had "marked" limitations in her "ability to complete a workday without interruptions from psychological symptoms and perform at a consistent pace without rest periods of unreasonable length or frequency." (Tr. 852). Additionally, Dr. Friedland opined that Plaintiff had "moderate-to-marked" limitations in her ability to "(1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) travel to unfamiliar places or use public transportation; and (4) make plans independently." Id.

Plaintiff argues that because her mental impairments are based on "appropriate mental status findings confirmed by the longitudinal treatment record and because they are uncontradicted by any other findings… they should be controlling." (Document 14-1, p. 14). At the very least, Plaintiff asserts, the ALJ should have determined the weight of Dr. Friedland's opinion regarding her mental impairment under the factors listed in 20 C.F.R. 404.1527(c)(2)(i)-(6). Id. Furthermore, Plaintiff contends that it was an error for the ALJ to award "great weight" to the non-examining state agency psychologist. Id. Plaintiff asserts that non-examining physician opinions are generally "entitled to the least amount of weight" and "standing alone, are not enough to constitute substantial evidence." Id.

In response, Defendant argues that the ALJ "properly weighed the impairment opinions of primary care physician Friedland." (Document No. 19, p. 18). The ALJ noted that the mental

14

status exams of record showed no impairment in recent remote memory, goal-directed thought process, normal attention and concentration, and unremarkable thought process. (Tr. 20). Further, the ALJ noted that Plaintiff is pleasant, cooperative, and generally exhibits fair judgment and insight when managing herself. Id. In a 2016 mental status examination by Dr. Castro, results showed Plaintiff appropriately dressed and groomed with normal gait, station, normal attention, and concentration. (Tr. 621). Her judgment was fair, and she had no abnormal perceptions or violent/suicidal thoughts. Id. In addition to the mental status exams, Defendant contends that the opinions of Drs. Skoll and Hilts, the state agency consultants, were accorded "great weight" for their "consistency with the mental status exams of record." (Document No. 19, p. 13). Defendant asserts that both the mental status exams and the opinions of Drs. Skoll and Hilts act as "substantial evidence" for the RFC found by the ALJ. See id. at 12-15.

In considering different medical opinions, the ALJ must "provide a narrative discussion" of how specific evidence supports "varying degrees of weight" accorded to the various opinions. Arakas, 983 F.3d 83, 110. In Arakas, the Court found the ALJ's decision to accord "significant weight to the opinions of the non-treating, non-examining state agency consultants was erroneous" due to the "conclusory explanation" that the consultants' opinions were "generally consistent with other evidence of record." Id. Similarly, in Monroe v. Colvin, by not specifying what "objective evidence he was referring to," the ALJ's analysis in awarding "limited weight" to a medical opinion was incomplete. 826 F.3d 176, 191 (4th Cir. 2016).

The undersigned finds that the ALJ was entitled to deviate from the treating physician rule by not giving Dr. Friedland's opinion controlling weight regarding Plaintiff's mental limitations as his opinion was inconsistent with the mental status exams on the record. (Tr. 31) (citing Tr. 612, 616, 629, 633, 637-38, 789, 1614, 1651-52, 1727). The ALJ correctly noted that though Dr.

Friedland opined that Plaintiff exhibited "depressed mood" and "persistent and generalized anxiety," "there is little support in the record for [finding] such significant mental functional deficits." (Tr. 31).

Further, the undersigned finds no error in the ALJ's consideration of the six factors provided in the regulations. Here, it is "apparent from the ALJ's decision that he meaningfully considered each of the factors," even though he was not required to set forth a "detailed factor-by-factor analysis to discount a medical opinion from a treating physician." See Dowling, 986 F.3d at 385. The ALJ's consideration of each factor was apparent in his decision by his noting the following: (1) "Dr. Friedland reported that he first treated the claimant on August 31, 2011, and that he has treated her every 4-6 months with his last examination of her on July 20, 2015;" (2) Dr. Friedland is Plaintiff's "treating physician;" (3) Dr. Friedland's opinion has "little support;" (4) the mental status exams performed were "not consistent" with the marked limitations suggested by Dr. Friedland; (5) Dr. Friedland is Plaintiff's "primary care physician;" and (6) other medical opinions, a third party functional report, and Plaintiff's subjective statements were also considered. (Tr. 21-22, 29-31).

Finally, the undersigned finds that the ALJ did not err in his weighing of the opinions of the state agency consultants. Unlike the ALJ in Arakas and Monroe, the ALJ in this case provided a "narrative discussion" of the specific evidence that supports the "varying degrees of weight" given to medical opinions. Here, in drawing his conclusion that the state agency consultants' opinions deserve "great weight," the ALJ cites mental status exams exhibited in the record that were consistent with their opinions. (Tr. 30) (citing Tr. 612, 616, 629, 633, 637-38, 789, 1614, 1651-52, 1727).

B.     Assignment of Error # 2

Next, Plaintiff argues that "the ALJ failed to properly evaluate Plaintiff's subjective statements." (Document No. 14-1, p. 15). The ALJ stated in his decision that he found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 26). Plaintiff contends that "the ALJ placed undue weight on his interpretation of the clinical and objective medical evidence" because the regulations state that "an individual's allegations cannot be rejected solely because available objective medical evidence does not substantiate the claimant's statements." (Document 14-1, p. 18). Further, Plaintiff contends that because she has fibromyalgia, the objective medical evidence cited by the ALJ would not discount her subjective statements because the symptoms of fibromyalgia are "entirely subjective," and trigger points are the "only objective signs" of fibromyalgia. Id.

In response, Defendant argues that "the ALJ was correct in finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her alleged symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Document No. 19, p. 21). Specifically, Defendant highlights Dr. Havlin's statement that "[Plaintiff] has had normal MRIs of the lumbar spine, normal EMG, and normal imaging of the hip" and that there was "no evidence of degenerative changes or joint space narrowing in the knees." Id. (citing Tr. 652).

Evaluation of a claimant's impairment-related symptoms proceeds in a two-step process mandated by the regulations. SSR 16-3P, 2016 WL 5180304, at *3 (Oct. 25, 2017). The first step involves considering "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." Id.

17

Second, "once an underlying physical or mental impairment… is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Id. Notably, the regulations speak to the role of objective evidence in the analysis: "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5. Objective evidence, then, or lack thereof, is "one of the many factors we must consider in evaluating intensity, persistence, and limiting effects of an individual's symptoms." Id.

However, the Fourth Circuit, takes a narrower view of the role of objective evidence – particularly in fibromyalgia cases. According to the Fourth Circuit, "ALJs may not rely on objective medical evidence (or lack thereof) – *even as just one of multiple factors* – to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 97 (4th Cir. 2020)(emphasis added). Indeed, "disability claimants are entitled to rely *exclusively* on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. at 98 (emphasis added).

The undersigned finds that the ALJ "applied the improper legal standard when evaluating objective medical evidence to discount Plaintiff's fibromyalgia." Bryson v. Berryhill, 2021 WL 2517682, at *5 (W.D.N.C. June 18, 2021). Here, the ALJ found that fibromyalgia was one of Plaintiff's severe impairments, and the ALJ took into account Plaintiff's testimony that she had "constant pain throughout her body, but primarily on her left side," "shooting pains in her neck with difficulty raising her left arm," she can lift "no more than two pounds," she can walk "no

more than two blocks," and had "periods of buckling in her knees with falls." (Tr. 26). However, the ALJ went on to state that "the medical evidence during the period at issue is not consistent with the level of impairment alleged by the claimant." (Tr. 26). In determining the RFC, the ALJ noted that (1) the available "medical evidence generally noted a normal gait and station;" (2) Plaintiff's lumbar spine X-ray "showed only mild findings;" (3) her physical exam showed "no focal neurological deficits, normal musculoskeletal range of motion and strength;" (4) "medical imaging… also showed primarily mild findings;" (5) and while a 2016 exam did note multiple tender points for fibromyalgia, "there appeared to be little to no other follow-up for this condition." (Tr. 26).

In short, the undersigned concludes that the ALJ's reliance on objective medical evidence to discount Plaintiff's subjective statements, "even as just one of multiple factors," is legally erroneous. Id. at 97. Reliance on these objective sources of evidence, except the tender points found, are precisely the kinds of evidence that the Fourth Circuit has stated in Arakas are inappropriate for an ALJ to consider when evaluating a "claimant's subjective complaints regarding symptoms of fibromyalgia… that does not produce such evidence." 983 F.3d at 96-97. Even if the ALJ were to consider the documented tender points, though they are inconsistently recorded, he could not reject Plaintiff's asserted fibromyalgia symptoms since pain and tenderness are regularly recorded. See Janel G., 2021 WL 3076407, at *10. Since these errors potentially "caused the ALJ to improperly assess the claimant's" RFC, the decision should be remanded. Bryson, 2021 WL 2517682, at *9.

### IV. CONCLUSION

Based on the analysis above and in consideration of the Fourth Circuit's recent decision in Arakas, the undersigned finds this matter should be remanded for further consideration. The

19

Case 3:20-cv-00472-DCK   Document 21   Filed 06/23/22   Page 19 of 20

more than two blocks," and had "periods of buckling in her knees with falls." (Tr. 26). However, the ALJ went on to state that "the medical evidence during the period at issue is not consistent with the level of impairment alleged by the claimant." (Tr. 26). In determining the RFC, the ALJ noted that (1) the available "medical evidence generally noted a normal gait and station;" (2) Plaintiff's lumbar spine X-ray "showed only mild findings;" (3) her physical exam showed "no focal neurological deficits, normal musculoskeletal range of motion and strength;" (4) "medical imaging… also showed primarily mild findings;" (5) and while a 2016 exam did note multiple tender points for fibromyalgia, "there appeared to be little to no other follow-up for this condition." (Tr. 26).

In short, the undersigned concludes that the ALJ's reliance on objective medical evidence to discount Plaintiff's subjective statements, "even as just one of multiple factors," is legally erroneous. Id. at 97. Reliance on these objective sources of evidence, except the tender points found, are precisely the kinds of evidence that the Fourth Circuit has stated in Arakas are inappropriate for an ALJ to consider when evaluating a "claimant's subjective complaints regarding symptoms of fibromyalgia… that does not produce such evidence." 983 F.3d at 96-97. Even if the ALJ were to consider the documented tender points, though they are inconsistently recorded, he could not reject Plaintiff's asserted fibromyalgia symptoms since pain and tenderness are regularly recorded. See Janel G., 2021 WL 3076407, at *10. Since these errors potentially "caused the ALJ to improperly assess the claimant's" RFC, the decision should be remanded. Bryson, 2021 WL 2517682, at *9.

### IV. CONCLUSION

Based on the analysis above and in consideration of the Fourth Circuit's recent decision in Arakas, the undersigned finds this matter should be remanded for further consideration. The

undersigned finds that there is not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence does not support the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be vacated.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment" (Document No. 14) is **DENIED**; the "Defendant's Motion For Summary Judgment" (Document No. 18) is **DENIED**; and the Commissioner's determination is **VACATED**. This matter shall be **REMANDED** for reconsideration consistent with this order.

**SO ORDERED**.

Signed: June 23, 2022

David C. Keesler
United States Magistrate Judge